EGBERT MEAD, Respondent, v. PATRICK McLAUGHLIN AND PHILANDER A. HUXLEY, Appellants.

1. *Deed of Trust — Sale — Payment by Note; when considered Cash.* — The terms of a deed of trust required that the real estate therein mentioned should be sold "for cash." Subsequent to the execution of the deed, and prior to the sale, the property became encumbered with various liens. At the sale, the purchaser paid for the property only a portion of the sum named as the purchase money, but gave his notes to the holders of the liens for the balances due them, over and above the amounts realized by them at the sale; and, in consideration of these notes, the lien-holders yielded up all their claims against the maker of the deed of trust: *Held*, that the notes so given were equivalent to cash placed in the hands of the trustee.

2. *Trustee — Purchase — Priority of Lien.* — The rule requiring the trustee to manage the trust estate for the benefit of his *cestui que trust*, would not prevent his purchasing a lien against the estate, when this lien was subsequent, in point of time, to the execution of the deed under which the trustee acted, and to all other liens on the property. It was the interest of the trustee, in such case, to make the property realize not only the amount of the lien so purchased by him, but of all other liens which were prior and superior to his own.

*Appeal from Fifth District Court.*

*Ensworth*, and *H. M & A. H. Vories*, for appellant.

I. The debts of plaintiff were cash debts, and were taken up and satisfied in part by notes of Huxley, the purchaser ; and the balance of the purchase money, not so paid by Huxley, he paid to the trustee, in cash. The notes given by Huxley, in part satisfaction of the notes of Mead, were received by the owners of the notes of Mead, secured by the deed of trust, in full payment of the same ; and the notes thus paid were delivered over to the trustee, which was a cash payment. (Appleton v. Kennon, 19 Mo. 637 ; 10 Barb. 372 ; 10 N. Y. 440 ; St. John v. Purdy, 1 Sandf. 9 ; 2 Duer, 133 ; 3 E. D. Smith, 54 ; 5 Wend. 85.)

II. When a trustee purchases an outstanding claim against the trust estate, and attempts to enforce it by judgment and execution sale, the court will grant an injunction to stop proceedings, because the trustee, having taken charge of the property under the trust, must protect it, and cannot act in any way but under the trust and the rules in the writing making the trust ; but there is no case, when a court ordered a resale, where a third person, entirely disconnected with the interest of the trustee, made the purchase of the property.

*Hall & Oliver*, and *Jones & Townsend*, for respondent.

I. A trustee is never permitted to raise in himself an interest opposite to that of his *cestui que trust*. McLaughlin violated the rule when he purchased a lien on the trust property for his own benefit. An independent interest in a trustee, in the subject of the trust, is in its very nature an interest hostile to the *cestui que trust*. (Fisk v. Sarber, 6 Watts & S. 18, 31, 35 ; Van Horn v. Fonda, 5 Johns. Ch. 408 ; Conger v. Ring, 11 Barb. 363, 364 ; 1 Lead. Cas. Eq. 71.) The rule here stated is a fundamental doctrine in equity. (5 Johns. Ch. 408 ; Page v. Nagh, 6 Cal. 244 ; 3 Ves. 740, *n.*)

II. A trustee who is intrusted to sell and manage for others, undertakes, at the same moment in which he becomes a trustee,

not to manage for the benefit of himself. This rule is enforced with unrelenting rigor. Its object is to afford the *cestui que trust* the most ample protection against fraud and injustice, and to remove out of the way of the trustee all temptation to violate his duties. (Conger v. Ring, 11 Barb. 364; Whitecote v. Laurence, 3 Ves. 740, n. *a* ; Wade v. Pettebone, 11 Ohio, 57.) And the rule embraces not only purchases of the trust estate by the trustee, but also purchases by the trustee of securities upon it for his own benefit. (Green v. Winter, 1 Johns. Ch. 36; 6 Cal. 744.)

III. If the trustee becomes a creditor under the deed of trust, either by purchase of the debt himself, or by his being constituted the executor or administrator of the creditor, it becomes necessary to go into equity to enforce the security, and it assumes the character of a mere mortgage. (1 Tucker's Com. 104.) If, then, McLaughlin had bought either of the notes secured by the deed of trust in this case, he could not have sold the property in suit to a purchaser with notice, so as to defeat plaintiff's equity of redemption. His purchase of the mechanic's lien for his own benefit worked an equal disqualification of his powers of sale. It created in him an interest hostile to that of plaintiff. (6 Cal. 744.)

IV. McLaughlin was directly interested in Huxley's purchase of the property in suit. By that purchase, his fourth lien, subject to Mrs. Mead's dower, was converted into first lien, discharged of dower. It is a rule that when a trustee of any description sells an estate, and becomes himself interested, either directly or indirectly, in the purchase, the *cestui que trust* is entitled, as of course, to have the sale set aside, and it makes no difference in the application of the rule that the sale was at public auction, in good faith, and for a fair price. This rule invalidates every indirect, as it does every direct, transfer to the trustee for his use. The principle applies, however innocent a purchaser may be in a given case. (4 Kent's Com. 438; 1 Story on Eq. § 322; 1 Lead. Cas. in Eq. 160, 161; Abbott v. American Hard Rubber Company, 33 Barb. 593, 594.)

V. McLaughlin's sale to Huxley was not for cash, but partly

for cash and partly on credit. Such a sale was not authorized by the deed of trust. It is the plain and settled rule that the conditions annexed to the exercise of the power must be strictly complied with. They are incapable of admitting any equivalent or substitution. The courts have been uniformly and severely exact on this point. It is not competent for a trustee to depart from the conditions of his power, although he might, by doing so, in reality promote the interest of those for whom he acted. (4 Kent, 330, 331; Greenleaf v. Queen *et al.*, 1 Pet. 145; Sugd. on Powers, 211.)

VI. Courts of equity, in the exercise of that vigilance which they employ for the protection of trusts, extend their control not only over the acts of trustees, but over the acts of those also who participate in the transaction; who aid and assist in the violation of the trust; who enable the trustee to violate it. It is a general rule that when the trustee does not act in pursuance of the trust, but in violation of it, even if he is within the letter of his power, those who co-operate with him in enabling him to defeat the trust are responsible for it. (Wallis v. Thornton's Adm'r, 2 Brock. 433.)

FAGG, Judge, delivered the opinion of the court.

This is an application on the part of the respondent to be permitted to redeem certain property, situate in the city of St. Joseph, which had been sold by McLaughlin under the authority of a deed of trust, and purchased by Huxley; and also containing a prayer for an account of the rents and profits of the same from the day of sale. The judgment of the Court of Common Pleas being for the defendant below, the same was reversed, upon a writ of error to the Fifth District Court, and the cause is now brought here by appeal. It appears that the deed under which the sale was made was executed by the respondent Mead and his wife, to secure the payment of three promissory notes, in favor of Mr. John E. Barrow, each for the sum of $200, payable respectively six, twelve, and eighteen months after date. Upon default made by Mead in the payment of the notes, the trustee is directed to sell the property for cash, after giving twenty days' notice, con-

taining the terms and description of the property, by advertisement in a newspaper published in the city of St. Joseph. The petition itself shows that default was made in the payment of the notes, and that McLaughlin, on the 10th day of April, 1862, sold the property at public sale; that Huxley became the purchaser of the same for the sum of $2,055, and some time afterward received a deed therefor. It is charged that there was no compliance with the requirements of the deed of trust, either in the giving of the notice or in the terms of sale.

It is admitted that there were several subsequent liens upon the same property, amounting in the aggregate to about $1,050, one of which, and the last in the order of procedure, had been purchased by McLaughlin and one Richardson, his partner in business, subsequent to the execution of the deed of trust by Mead. The property is described as lot number four (4) in block forty-three (43) in Patee's addition to the city of St. Joseph. It is charged that the said property was sold partly for cash and partly upon credit; that this was in pursuance of an arrangement made by Huxley with the owners of these several liens, including McLaughlin and Richardson, whose claim amounted to the sum of $385.62, and also with the owner and holder of the promissory notes secured by the deed. It is further alleged that this arrangement was fully consummated by the parties, Huxley having only paid the sum of $860 cash, and executed his notes to the owners and holders of these liens for the respective balances due to each, after a division of the money so paid among them, in proportion to the amount of their several claims; that all this, with the execution of the deed to Huxley by McLaughlin, constituted one and the same transaction; that in pursuance further of this arrangement, and as part of the same transaction, a mortgage was executed by Huxley and wife upon the same property, to secure the several notes which had been executed to these parties under this agreement.

There are some other allegations in reference to the depression of property in St. Joseph at that time, the number of bidders at the sale, and the amount of money received by Huxley for the rent of the property, that we do not deem it necessary to notice specifically.

Huxley is also charged with specific knowledge, at and before the sale, of all the facts set out in the petition, and further, that the said arrangement was made by him and McLaughlin so as to enable said Huxley to buy said property, to the exclusion of others who might desire to purchase the same, and to give said Huxley an advantage over other bidders at said sale; and that said sale was wrongfully made on the part of said Huxley and McLaughlin, so as to secure to Huxley the purchase of said property, on the terms and conditions before stated, partly for the benefit of said McLaughlin, which were known only to defendants and the owners of said liens.

To this petition there were separate answers filed, denying specifically all allegations of wrongful and corrupt dealing with the property by the trustee, or any knowledge of or participation in the same by the purchaser, and alleging a compliance in all respects with the terms and requirements of the deed.

The testimony in this case is somewhat voluminous, and need not be examined in detail. The notice given by the trustee of the sale seems to have been in compliance with the requirements of the deed. All the estimates made by the witnesses, with one exception, of property in St. Joseph at the time of the sale, concur in placing the amount at which this property was sold at something more than its actual market value.

The arrangement alleged to have been made by Huxley with the owners of the several liens upon the property is made somewhat conspicuous in the argument of the case, for the purpose of proving that the trustee failed to comply with the requirements of the deed as to the terms of the sale. A careful examination of the facts proved will show most conclusively, we think, that there was no such failure. The payment of the liens upon the property, as made by Huxley, were certainly equivalent to cash placed in the hands of the trustee. They operated to extinguish the debts due by Mead to these several parties, and this is all that he could have required of the trustee. They are admitted by the petition to be due, and at the time constituted valid and subsisting liens upon the property. McLaughlin was, therefore, fully authorized to pay them off, and could have done so without any

ground of complaint on the part of Mead if the purchase money had been paid to him in full by Huxley. Even though there had been no admission of the existence of these liens, still, if they had existed in fact, the trustee would have been fully protected in paying them if he had thought proper to do so. In point of fact there was no credit given to the purchaser for any portion of the purchase money. It was a loaning of the several sums of money by the owners of the several liens, and could have been done with as much propriety before the sale as it could afterward. The evidence shows that this arrangement was not made at the instance of the trustee, or his partner in business. It was made by the others, and assented to by him, with no intention, as far as the proof shows, or the circumstances will warrant us in believing, of departing from the requisitions of the deed. The effect of this arrangement was, whatever may have been intended by the parties, to make the property bring as much as the amount of all these liens put together, and fully as much as it was worth. It is presumed that the intention of the owners of these liens was to do that, and the proof goes very far to show that without some such arrangement the property would not have sold for as much as it actually did. The whole tendency of it would seem to be to increase the chances of realizing a larger sum than could otherwise have been obtained for the property. The question may very well be asked, then, who was injured by the transaction? Certainly, it was not the *cestui que trust*. The testimony shows that the lien owned by McLaughlin and Richardson was acquired before the trustee had any knowledge of his appointment. It was bought at par, and there is no circumstance that tends to show that the trustee intended to use his position for the purpose of speculating in the debts and liabilities of Mead, or that the possession of this claim placed any temptation before him to deal improperly with the property conveyed to him. After default made in the payment of the notes secured by the deed, he had no discretion in fixing the time for the sale of the property. He was bound to proceed with the sale whenever the holder of the notes should require it. He says that the sale was not made on account of any anxiety on his part in reference to his own claim, but at the solicitation of

the holder of the notes; that the purchaser Huxley was a stranger to him, and his prejudices were rather against him and in favor of one McGuire, who occupied the property at that time. It is not perceived that any advantage was given, or was intended to have been given, to the purchaser over any other party desiring to bid. McGuire is the only witness in the case that places a higher estimate upon the value of the property than the sum it actually sold for, and there are many circumstances to weaken, if not entirely destroy, his testimony. It is enough, however, that the whole weight of the evidence is against him, and the fact must be found in opposition to his statements.

The chief ground upon which the counsel for the respondent seem to rely in support of his application for relief in this case is, that in the purchase by the trustee of the debt against Mead, and which constituted a lien upon the property in question, he had raised in himself an interest opposite to that of his *cestui que trust*. The general principles of equity, as stated in the argument of counsel, are all conceded, but we think are without application in the case at bar. It should be borne in mind that this lien was subsequent, in point of time, to the execution of the deed under which the trustee acted. The lien was merely an incident to the debt, and certainly constituted no inducement to the trustee to force the property to sale at a time when it was likely to be sacrificed. The interest of the trustee, then, was to make the property bring not only the debt secured by the deed, but also all the debts, which were prior liens, and superior to his own. It is true that he could not purchase the trust property, nor would he be allowed to acquire any interest in it, opposed to the interest of the party for whom he was acting in this confidential capacity, or such as would place before him a temptation to act wrongfully in the execution of the trust.

But we fail to see any ground of complaint in this case, because the satisfaction of his debt resulted simply from the fact that the proceeds of the sale, fairly made, and really without any objection on the part of the respondent, were sufficient to satisfy all the liens which were admitted to exist against the property.

The rule requiring a trustee to manage the trust estate for the

14—VOL. XLII.

benefit of his *cestui que trust* would preclude him from acquiring any interest, or doing any act, which would be advantageous to himself and prejudicial to the other. Hence he could not compound debts and mortgages, or buy them in for less than the amount due, so as to take any benefit to himself. In all such cases, the *cestui que trust* may require him to account for all profits and benefits acquired. Nothing of that sort, however, is asked for in this case, and it is useless to inquire into the amount paid by the trustee for the lien which he acquired. As to the prosecution of any of these liens to judgment after the sale of the property, we do not deem it necessary to say anything except that the evidence shows that the parties themselves considered them all as satisfied and extinguished by the arrangement made with Huxley ; and it cannot affect the question of the right of Mead to redeem the property. There is no doubt about the liability of a trustee to account for all sums of money unnecessarily expended by him out of the trust funds. If any cause of action exists against the trustee, growing out of any misapplication of the funds in his hands, the *cestui que trust* is not concluded by the decision of this case, but may still have his remedy against him.

The judgment of the District Court must be reversed, and the judgment of the Court of Common Pleas affirmed. The other judges concur.